Jack Silver, Esq. SB #160575
E-mail:lhm28843@sbcglobal.net
Law Office of Jack Silver
Post Office Box 5469
Santa Rosa, CA 95402-5469
Tel.(707) 528-8175
Fax.(707) 528-8675

David J. Weinsoff, Esq. SB# 141372
Email: david@weinsofflaw.com
Law Office of David J. Weinsoff
138 Ridgeway Avenue
Fairfax, CA 94930
Tel. (415) 460-9760
Fax. (415) 460-9762

Attorneys for Plaintiff
CALIFORNIA RIVER WATCH

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RIVER WATCH, a 501(c)(3), non-profit, Public Benefit Corporation,<br><br>Plaintiff,<br><br>v.<br><br>EASTERN MUNICIPAL WATER DISTRICT,<br><br>Defendant.<br>_____/ | Case No.: 5:15-cv-01079<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL PENALTIES, AND DECLARATORY RELIEF**<br><br>(Environmental - Clean Water Act 33 U.S.C. § 1251, *et seq.*) |

CALIFORNIA RIVER WATCH ("RIVER WATCH"), an Internal Revenue Code Section 501(c)(3) non-profit, public benefit corporation, by and through its counsel, hereby alleges:

## I.     NATURE OF THE CASE

1.     This is a citizens' suit for relief brought by RIVER WATCH under the Federal Water Pollution Control Act, also known as the Clean Water Act ( "CWA"), 33 U.S.C. § 1251 et seq., specifically the citizen's suit provision under CWA § 505, 33 U.S.C. §1365 to enforce CWA § 301, 33 U.S.C. § 1311, and CWA § 402, 33 U.S.C. § 1342, in order to prevent Defendant EASTERN MUNICIPAL WATER DISTRICT (the

"DISTRICT") from repeated and ongoing violations of the CWA. These violations are detailed in the Notice of Violations and Intent to File Suit dated January 28, 2015 ("CWA NOTICE") made part of this pleading and attached hereto as **EXHIBIT A**.

2.      The CWA regulates the discharge of pollutants into navigable waters. The statute is structured in such a way that discharge of pollutants is prohibited with the exception of enumerated statutory exceptions under CWA § 301(a), 33 U.S.C. § 1311(a). One such exception authorizes a polluter, which has been issued a permit pursuant to CWA § 402, to discharge designated pollutants at certain levels subject to certain conditions. The effluent discharge standards or limitations specified in a National Pollutant Discharge Elimination System ("NPDES") permit define the scope of the authorized exception to the 33 U.S.C. § 1311(a) prohibition, such that violation of a NPDES permit limitation places a polluter in violation of CWA § 505, 33 U.S.C. § 1365.

3.      The CWA provides that authority to administer the NPDES permitting system in any given state or region can be delegated by the Environmental Protection Agency ("EPA") to a state or regional authority regulatory agency, provided that the applicable state or regional regulatory scheme under which the local agency operates satisfies certain criteria under 33 U.S.C. § 1342(b). In California, the EPA has granted authorization to a state regulatory apparatus comprised of the State Water Resources Control Board and several subsidiary regional water quality control boards to issue NPDES permits. The entities responsible for issuing NPDES permits and otherwise regulating the DISTRICT's operations in the regions at issue in this Notice are the Santa Ana Regional Water Quality Control Board ("RWQCB Region 8"), and the San Diego Regional Water Quality Control Board ("RWQCB Region 9").

4.      The DISTRICT owns and operates the Moreno Valley, Perris Valley, San Jacinto Valley, Sun City, and Temecula Valley Regional Water Reclamation Facilities and their associated collection systems.

5.      RIVER WATCH contends the DISTRICT is routinely violating the CWA by exceeding the effluent discharge standards or limitations in the NPDES" Permits under which the Water Reclamation Facilities and the Riverside County collection

systems are regulated, specifically, Regional Water Quality Control Board Order No. R8-2009-0014, NPDES No. CA8000188 (Waste Discharge Requirements for Eastern Municipal Water District Regionwide Water Recycling System, Temescal Creek Discharge, Riverside County).

6.      RIVER WATCH contends the DISTRICT is also violating RWQCB Region 8 and RWQCB Region 9 Water Quality Control Plans ("Basin Plans"), Environmental Protection Agency ("EPA") regulations codified in the Code of Federal Regulations, and toxics standards promulgated by the State Water Resources Control Board, in the course of the DISTRICT's operation of the Water Reclamation Facilities as described in the CWA NOTICE.

7.      RIVER WATCH contends the DISTRICT illegally discharges pollutants to the San Jacinto, Santa Ana, and Santa Margarita Rivers and their tributaries, which include Murrieta Creek, Temescal Creek, and Salt Creek, which have the beneficial uses identified in the Basin Plans adopted by RWQCB Region 8 and RWQCB Region 9, including water contact recreation, freshwater habitat for fish, and rare, threatened or endangered species as these terms are defined by the California EPA and the United States EPA.

8.      RIVER WATCH, as set forth with particularity in the CWA NOTICE, alleges three (3) separate CWA violations:

• Collection System Subsurface Discharges Caused by Underground Exfiltration – The DISTRICT owns and operates two (2) collection systems – the Moreno Valley, Perris Valley, San Jacinto, and Sun City collection system within the Santa Ana watershed ("Collection System #1); and the Temecula Valley Regional Water Reclamation Facilities in the Santa Margarita watershed (Collection System #2).

Exfiltration caused by pipeline cracks and other structural defects in the collection system results in discharges to adjacent surface waters via underground hydrological connections. The DISTRICT's internal reports indicate discharges to surface waters not reported to the California Integrated Water Quality System ("CIWQS") reporting system. Because the entire system has not been adequately inspected by means of closed circuit television ("CCTV"), the DISTRICT has insufficient information concerning the

condition or the extent of exfiltration for a significant portion of the collection system. These sections of the system are old and in need of repair. Untreated sewage is discharged from cracks, displaced joints, eroded segments, etc., into groundwater hydrologically connected to surface waters. Evidence indicates extensive exfiltration from lines within 200 feet of a surface water.

Discharges are continuous whenever aging, damaged and/or structurally defective sewer liens in the DISTRICT's collection systems are located adjacent to surface waters including Murrieta Creek, the San Diego Canal, the Santa Ana River, and Temescal Creek. Surface waters and groundwater become contaminated with fecal coliform, exposing people to pathogens. Chronic failures in the collection system pose a substantial threat to public health. Studies tracing human markers specific to the human digestive system in surface waters adjacent to defective sewer lines in other systems have verified the contamination of the adjacent waters with untreated sewage.[1]

Evidence of exfiltration can be found in mass balance data, "inflow and infiltration ("I/I") data, video inspection, and tests of waterways adjacent to sewer lines for nutrients, human pathogens and other human markers such as caffeine. Exfiltration from the DISTRICT's collection systems is a daily occurrence and a violation of the DISTRICT's NPDES Permit and the CWA.

- <u>Collection System Surface Discharges Caused by Sanitary Sewer Overflows</u> –

Sanitary Sewer Overflows ("SSOs") in which untreated sewage is discharged above ground from the collection systems prior to reaching the treatment facilities, are alleged to have occurred both on the dates identified in the CIWQS Interactive Public SSO Reports (43 separate violations from Collection System # 1 and Collection System # 2) and on dates when no reports were filed by the DISTRICT, all in violation of the DISTRICT's NPDES permit.

The DISTRICT's aging collection systems have historically experienced high I/I

---

[1]See Report of Human Marker Study issued July, 2008 and conducted by Dr. Michael L. Johnson, U.C. Davis water quality expert, performed for the City of Ukiah, finding the presence of human derived bacteria in two creeks adjacent to defective sewer lines.

during wet weather and flooding.  Structural defects which allow I/I into the sewer lines result in a buildup of pressure which causes SSOs. Overflows caused by blockages and I/I result in the discharge of raw sewage into gutters, canals, and storm drains which are connected to adjacent surface waters – all waters of the United States.

As recorded in CIWQS Public SSO Reports, Collection System #1 has experienced at least 28 SSOs between January 26, 2010 and November 16, 2014, with a combined volume of at least 1,317,633 gallons – 186,205 gallons of which were reported as having reached surface waters.  Collection System #2 has experienced at least 15 SSOs between January 23, 2010 and May 24, 2014. The combined volume was at least 300,860 gallons, with only 6% recovered, yet just 8% – 26,715 gallons – acknowledged as having reached surface waters.  As examples, on July 29, 2013, a spill occurred at Adeline Avenue and Eucalyptus Avenue in Moreno Valley, from Collection System #1. The SSO report lists the same amount - 157,430 gallons - for total volume, volume recovered, and volume which reached surface waters. This incident was noticed and responded to 3 days after the spill began.  The impacted surface water was the Mariposa storm channel, a drainage course to the Pacific Ocean.  Also, on May 24, 2014, a spill of 12,990 gallons occurred from an air relief valve failure at the Pala Force Main, part of Collection System #2.  The address was not reported, and the total spill volume was 12,990 gallons, 12,890 of which reached Murrieta Creek.

RIVER WATCH alleges that many of the SSOs reported by the DISTRICT as having been contained without reaching a surface water did in fact discharge to surface waters, and those reported as partially reaching surface waters did so in greater volume than stated.  The claim of full containment is further called into question by the fact that some of the DISTRICT's SSO reports state the estimated start time of the SSO as the time when the reporting party first noticed the SSO.  Studies have shown that most SSOs are noticed significantly after they have begun.  The DISTRICT reports that some of the discharges reach a storm drain, but fails to determine the accurate amounts which reach a surface water.

Since the volume of SSOs of any significance is estimated by multiplying the estimated flow rate by the duration, the practice of estimating a later than actual start

time leads to an underestimation of both the duration and the volume.  In reporting an SSO from Collection System #1, at Keller Road and  Menifee Road on August 29, 2011, the estimated spill start time and agency notification time are both listed as 14:20:00, and the estimated operator arrival time and spill end time are both recorded as 14:38:00. The reported volume of that SSO is 54 gallons, however given the unlikely accuracy of the times on the report, it is difficult to consider the stated volume as accurate.

RIVER WATCH has also determined that the DISTRICT's method for estimating flow rate also underestimates the volume of a SSO.  Furthermore, a review of the service records calls into question the DISTRICT's methodologies for determining the volume of SSOs captured.   The DISTRICT is a permittee under the Statewide General Requirements for Sanitary Sewer Systems, Waste Discharge Requirements Order No. 2006-0003-DWQ ("Statewide WDR") governing the operation of sanitary sewer systems.  The Statewide WDR requires that sewer system operators report SSOs to the CIWQS and include in that reporting an estimate of the volume of any spill, the volume recovered and the volume which reached a surface water.  The DISTRICT's field reports generally do not indicate what method was used to estimate the total volume of the spill, which further calls into question the estimates of volume recovered and volume reaching surface waters. RIVER WATCH alleges that the DISTRICT is grossly underestimating the incidence and volume of SSOs that reach surface waters.

RIVER WATCH further alleges that the DISTRICT fails to adequately mitigate the impacts of SSOs.  The Statewide WDR mandates that the permittee shall take all feasible steps to contain and mitigate the impacts of a SSO. The EPA's 'Report to Congress on the Impacts of SSOs' identifies SSOs as a major source of microbial pathogens and oxygen depleting substances. Numerous critical habitat areas exist within the areas of the DISTRICT's SSOs. There is no record of the DISTRICT performing any analysis of the impacts of SSOs on critical habitat of protected species under the ESA, nor any evaluation of the measures needed to restore water bodies designated as critical habitat from the impacts of SSOs.

The Statewide WDR requires the DISTRICT to take all feasible steps and perform necessary remedial actions following the occurrence of a SSO, including limiting the

volume of waste discharged, terminating the discharge, and recovering as much of the wastewater as possible. Further remedial actions include intercepting and re-routing of wastewater flows, vacuum truck recovery of the SSO, cleanup of debris at the site, and modification of the collection system to prevent further SSOs at the site.  One of the most important remedial measures is the performance of adequate sampling to determine the nature and the impact of the release. As the DISTRICT is severely underestimating SSOs which reach surface waters, RIVER WATCH contends the DISTRICT is also not conducting sampling on most SSOs.

•     Exceeding Effluent Limitations –

The DISTRICT's Self Monitoring Reports identify violations of effluent limitations imposed under its NPDES permit for coliform, ammonia, coliform bacteria, and dichlorobromomethane.

9.     RIVER WATCH, in addition to alleging violations of CWA, further alleges the DISTRICT's operations cause nuisance.  The DISTRICT's NPDES permit prohibits the discharge of wastes that lead to the creation of a "nuisance" as defined under the California Water Code.  The term "nuisance" is defined in California Water Code § 13050(m) as anything which meets all of the following requirements: 1) "is injurious to health, or is indecent or offensive to the senses . . . so as to interfere with the comfortable enjoyment of life or property;" 2) "affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal;" and, 3) "occurs during, or as a result of, the treatment or disposal of wastes." The San Jacinto, Santa Ana, and Santa Margarita Rivers and their tributaries, which include Murrieta Creek and Temescal Creek, have many beneficial uses as defined in the Basin Plans adopted by RWQCB Region 8 and RWQCB Region 9, including water contact recreation, freshwater habitat for fish, and rare, threatened or endangered species.  SSOs reaching these waters cause prohibited pollution by unreasonably affecting their beneficial uses. The DISTRICT is also required by its NPDES Permit to comply with narrative standards as set forth in these Basin Plans, used when testing by numeric standards would be inadequate or impractical.  Narrative standards include:

- Waters shall not contain taste or odor producing substances at concentrations which cause a nuisance or adversely affect beneficial uses;

- Waters shall not contain floating material, including solids, liquids, foams, and scum in concentrations which cause nuisance or adversely affect beneficial uses;

- The pH value shall not be changed at any time more than 0.2 pH units from that which occur naturally; and,

- The natural receiving water temperature of intrastate waters shall not be altered unless it can be demonstrated to the satisfaction of the Regional Board that such alteration in temperature does not adversely affect beneficial uses.

RIVER WATCH has found nothing in the public record to demonstrate that the DISTRICT has monitored for and complied with these narrative standards. RIVER WATCH is understandably concerned regarding the effects of both surface and underground SSOs on critical habitat in and around the San Jacinto, Santa Ana, and Santa Margarita Rivers and their tributaries.

10.     RIVER WATCH seeks declaratory relief, injunctive relief to prohibit future violations, the imposition of civil penalties, and other relief for the DISTRICT's violations of the CWA as alleged in this Complaint.

## II.     PARTIES TO THE ACTION

11.     RIVER WATCH is an Internal Revenue Code §501(c)(3) non-profit public benefit corporation duly organized under the laws of the State of California, with headquarters and main office located at 290 S. Main Street, #817, Sebastopol, California. RIVER WATCH is dedicated to protecting, enhancing and helping to restore the groundwater and surface water environs of California including, but not limited to, its rivers, creeks, streams, wetlands, vernal pools, aquifers, and associated environs, as well as to educate the public concerning environmental issues associated with these environs.

12.     Members of RIVER WATCH live in or recreate nearby to the waters and watersheds affected by the DISTRICT's illegal discharges as alleged herein.  Said members have interests in the waters and watersheds identified in this Complaint, which

interests are or will be adversely affected by the DISTRICTS's violations of the CWA. Said members use the effected waters and watershed areas for domestic water, recreation, sports, fishing, swimming, hiking, photography, nature walks, and the like.

13.    RIVER WATCH is informed and believes and on such information and belief alleges that Defendant DISTRICT is now, and at all times relevant to this Complaint was, a state-government authorized Special District representing approximately 758,000 people within a 555-square-mile service area with boundaries from Riverside to Temecula, and from the San Jacinto Valley to Good Hope and Mead Valley, with administrative offices located at 2270 Trumble Road, Perris, California. The DISTRICT collects wastewater from homes and businesses within its boundaries, transporting it through 1,727 miles of gravity pipelines to a single regionwide water recycling system connecting five (5) Regional Water Reclamation Facilities – the Temecula Valley Regional Water Reclamation Facility, Moreno Valley Regional Water Reclamation Facility, Perris Valley Regional Water Reclamation Facility, San Jacinto Valley Regional Water Reclamation Facility, and Sun City Regional Water Reclamation Facility.  Four of the facilities are located within the jurisdiction of RWQCB Region 8; the Temecula Valley Regional Water Reclamation Facility is within the jurisdiction of RWQCB Region 9.

The DISTRICT provides freshwater, wastewater and recycled water services to an area of 542 square miles from Moreno Valley to Temecula southward, and from Hemet to San Jacinto eastward.  The DISTRICT's retail service area includes the cities of Moreno Valley, Menifee, Murrieta, and Temecula, as well as the unincorporated communities of Good Hope, Homeland, Lakeview, Nuevo, Mead Valley, Murrieta Hot Springs, Quail Valley, Romoland, Valle Vista and Winchester.  The DISTRICT also supplies water on a wholesale basis to the cities of Hemet, San Jacinto, and Perris, as well as the Lake Hemet Municipal Water District, Nuevo Water Company, Elsinore Valley Municipal Water District, Western Municipal Water District, and Rancho California Water District.

The DISTRICT consists of a 5-member Board of Directors, each representing comparably sized populations in a four-year term.

The area served by the DISTRICT includes approximately 18 hospitals, 8 airports, 5 Amtrak stations, 38 colleges/universities, 32 high schools, 31 shopping centers, 34 recreational parks, and over 9 golf courses.

The wastewater system owned and operated by the DISTRICT provides service to a population of approximately 768,000 people and treats more than 50,000 acre feet over the course of a year.  The DISTRICT produces two levels of reclaimed water treatment: Secondary treatment, which employs biological oxidation to remove nearly all suspended solids and other impurities; and tertiary level of treatment, which removes bacteria, viruses and virtually all suspended solids.  Approximately 80% of the wastewater produced is reused throughout the watershed.

The pipeline system ultimately discharges advanced, secondary treated effluent into Temescal Creek, Salt Creek, and the San Jacinto River, tributary to the Santa Ana River.  Recycled water is treated at the Temecula Valley Regional Water Reclamation Facility, located in Temecula, Riverside County.  Together the 5 Regional Water Reclamation Facilities typically reclaim 46 million gallons per day (mgd) out of their 63 mgd total capacity from an estimated 218,000 sewer connections, including those served by local water agencies and municipalities. Recycled water is distributed within the Santa Margarita Hydrologic Area.

In addition, the DISTRICT is one of the 26 member agencies of the Metropolitan Water District of Southern California ("MWD"), and as a result, has access to imported water direct from MWD.  The DISTRICT imports and sells State Project Water from northern California, and Colorado River Water, both raw and treated, via the Colorado River aqueduct. The DISTRICT's drinking water is primarily imported from the MWD or from local groundwater supplying approximately 160,000 service connections.

## III.   JURISDICTIONAL ALLEGATIONS

14.   Under 33 U.S.C. § 1251(e), Congress declared its goals and policies with regard to public participation in the enforcement of the CWA.  33 U.S.C. § 1251(e) provides, in relevant part:

> Public participation in the development, revision, and enforcement of any regulation, standard, effluent limitation, plan or program established by the Administrator or any State under this chapter shall be provided for,

encouraged, and assisted by the Administrator and the States.

15.     Subject matter jurisdiction is conferred upon this Court by CWA § 505(a)(1), 33 U.S.C. § 1365(a)(1), which states in relevant part,

> "any citizen may commence a civil action on his own behalf against any person . . . .who is alleged to be in violation of (A) an effluent standard or limitation . . . . or (B) an order issued by the Administrator or a State with respect to such a standard or limitation."  For purposes of CWA § 505(a)(1), 33 U.S.C. 1365(a)(1) the term "citizen" means, "a person or persons having an interest which is or may be adversely affected." [2]

16.     Members and supporters of RIVER WATCH reside in the vicinity of, enjoy visiting the area, derive livelihoods from, own property near, and/or recreate on, in or near and/or otherwise use, enjoy and benefit from the waterways and associated natural resources into which the DISTRICT discharges pollutants, or by which the DISTRICTS's operations of the Regional Water Reclamation Facilities adversely affect said members' interests, in violation of CWA §§ 301(a) and 402, 33 U.S.C.§§ 1311(a) and 1342.  The health, economic, recreational, aesthetic and environmental interests of RIVER WATCH and its members may be, have been, are being, and will continue to be adversely affected by the DISTRICT's unlawful violations of the CWA as alleged in this Complaint.  RIVER WATCH and its members contend there exists an injury in fact to them, causation of that injury by the DISTRICT's complained of conduct, and a likelihood that the requested relief will redress that injury.

17.     Pursuant to CWA § 505(b)(1)(A), 33 U.S.C.§ 1365(b)(1)(A), notice of the CWA violations alleged in this Complaint was given more than sixty (60) days prior to commencement of this lawsuit, to: (a) the DISTRICT, (b) the United States EPA, Federal and Regional, (c) the State of California Water Resources Control Board, and (d) the RWQCBs (Regions 8 and 9).

18.     Pursuant to CWA § 505(c)(3), 33 U.S.C. § 1365(c)(3), a copy of this Complaint has been served on the United States Attorney General and the Administrator

---

[2] See CWA § 505(g), 33 U.S.C. 1265(g). "For purposes of this section [CWA § 505] the term 'citizen' means a person or persons having an interest which is or may be adversely affected."

of the Federal EPA.

19.　　Pursuant to CWA § 505(c)(1), 33 U.S.C. § 1365(c)(1), venue lies in this District as the Regional Water Reclamation Facilities and the sites where illegal discharges occurred, which are the source of the violations complained of in this action, are located within this District.

## IV.　STATUTORY AND REGULATORY BACKGROUND

20.　　CWA § 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source to navigable waters of the United States, or activities not authorized by, or in violation of an effluent standard or limitation or an order issued by the EPA or a State with respect to such a standard or limitation including a NPDES permit issued pursuant to CWA § 402, 33 U.S.C. § 1342. Additional sets of regulations are set forth in the Basin Plans, California Toxics Rule, the Code of Federal Regulations and other regulations promulgated by the EPA and the State Water Resources Control Board. Sewage is specifically identified in the CWA as a pollutant.  The discharge outfalls and sewer lines owned and operated by the DISTRICT are point sources under the CWA.

21.　　The affected waterways identified in this Complaint and in the CWA NOTICE are navigable waters of the United States within the meaning of CWA § 502(7), 33 U.S.C. § 1362(7).

22.　　The CWA provides that authority to administer the NPDES permitting system in any given state or region can be delegated by the EPA to a state or to a regional regulatory agency, provided that the applicable state or regional regulatory scheme under which the local agency operates satisfies certain criteria (see 33 U.S.C. § 1342(b)).  In California, the EPA has granted authorization to a state regulatory apparatus comprised of the State Water Resources Control Board and several subsidiary regional water quality control boards to issue NPDES permits. The entity responsible for issuing NPDES permits and otherwise regulating the DISTRICT's operations, including the Reclamation Facilities, and associated sewage collection system is RWQCB Region 8 and RWQCB Region 9.

23.    The DISTRICT's Regional Water Reclamation Facilities, including its associated sewage collection system, are regulated under RWQCB Order No. R8-2009-0014, NPDES No. CA8000188 (Waste Discharge Requirements for Eastern Municipal Water District, Regionwide Water Recycling System, Temescal Creek Discharge, Riverside County). RIVER WATCH alleges the DISTRICT has committed numerous violations of its NPDES Permit, as detailed herein and in the CWA NOTICE. All violations of a duly authorized NPDES Permit are a violation of the CWA.

24.    The Code of Federal Regulations Title 40 § 122.41 (40 CFR § 122.41) includes conditions, or provisions, that apply to all NPDES permits. Additional provisions applicable to NPDES permits are found at 40 CFR § 122.42. The DISTRICT must comply with all of the provisions of its NPDES Permit. Pursuant to 40 CFR § 122.41, any permit noncompliance constitutes a violation of the CWA.

## V.    CLAIMS FOR RELIEF

## A.    FIRST CLAIM FOR RELIEF

### Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. § 1365(a)(1)(B)  -

### Violation of NPDES No. CA8000188 - Effluent Limit for Coliform

25.    RIVER WATCH re-alleges and incorporates by reference the allegations of Paragraphs 1 through 24 above  as though fully set forth herein including all allegations in the CWA NOTICE.  RIVER WATCH is informed and believes, and on such information and belief alleges, as follows:

26.    The DISTRICT has violated and continues to violate the CWA as evidenced by the discharges of pollutant coliform exceeding effluent limits, from discharge point 001. RIVER WATCH contends that from January 1, 2010 through January 1, 2015, the DISTRICT experienced 6 effluent discharges exceeding the NPDES Permit limit for coliform, in violation of Order No. R9-2009-0014, IV. Effluent Limitations and Discharge Specifications, A. Effluent Limitations – Discharge Point 001.

## B.    SECOND CLAIM FOR RELIEF

### Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. § 1365(a)(1)(B) -

**Violation of NPDES No. CA8000188 - Effluent Limit for Ammonia**

27.     RIVER WATCH re-alleges and incorporates by reference the allegations of Paragraphs 1 through 24 above as though fully set forth herein including all allegations in the CWA NOTICE.  RIVER WATCH is informed and believes, and on such information and belief alleges, as follows:

28.     The DISTRICT has violated and continues to violate the CWA as evidenced by the discharges of pollutant ammonia exceeding effluent limits, from discharge point 001.  RIVER WATCH contends that from January 1, 2010 through January 1, 2015, the DISTRICT experienced 2 effluent discharges exceeding the NPDES Permit limit for ammonia, in violation of Order No. R9-2009-0014, IV. Effluent Limitations and Discharge Specifications, A. Effluent Limitations – Discharge Point 001.

**C.     THIRD CLAIM FOR RELIEF**

**Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. § 1365(a)(1)(B) -**

**Violation of NPDES No. CA 8000188 - Effluent Limit for Coliform Bacteria**

29.     RIVER WATCH realleges and incorporates by reference the allegations of Paragraphs 1 through 24 above including the CWA NOTICE as though fully set forth herein.  RIVER WATCH is informed and believes and based upon such information and belief alleges as follows:

30.     The DISTRICT has violated and continues to violate the CWA as evidenced by the discharges of pollutant coliform bacteria exceeding effluent limits, from discharge point 001.  RIVER WATCH contends that from January 1, 2010 through January 1, 2015, the DISTRICT experienced 1 effluent discharge exceeding the NPDES Permit limit for coliform bacteria, in violation of Order No. R9-2009-0014, IV. Effluent Limitations and Discharge Specifications, A. Effluent Limitations – Discharge Point 001.

**D.     FOURTH CLAIM FOR RELIEF**

**Pursuant to CWA § 505(a)(1)(B), 33 U.S.C.  § 1365(a)(1)(B) -**

**Violation   of   NPDES   No.   CA8000188   -   Effluent   Limit   for**

**Dichlorobromomethane**

31.     RIVER WATCH realleges and incorporates by reference the allegations of Paragraphs 1 through 24 above including the CWA NOTICE as though fully set forth herein. RIVER WATCH is informed and believes and based upon such information and belief alleges as follows:

32.     The DISTRICT has violated and continues to violate the CWA as evidenced by the discharges of pollutant dichlorobromomethane exceeding effluent limits, from discharge point 001. RIVER WATCH contends that from January 1, 2010 through January 1, 2015, the DISTRICT experienced 2 effluent discharges exceeding the NPDES Permit limit for dichlorobromomethane, in violation of Order No. R9-2009-0014, IV. Effluent Limitations and Discharge Specifications, A. Effluent Limitations – Discharge Point 001.

**E.     FIFTH CLAIM FOR RELIEF**

**Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. § 1365(a)(1)(B) –**

**Violation of NPDES No. CA8000188 - Collection System Unpermitted Subsurface Discharges**

33.     RIVER WATCH realleges and incorporates by reference the allegations of Paragraphs 1 through 24 above including the CWA NOTICE as though fully set forth herein. RIVER WATCH is informed and believes and based upon such information and belief alleges as follows:

34.     The DISTRICT has violated and continues to violate the CWA as evidenced by its wastewater collection system subsurface discharges of pollutants (raw sewage) from a point source (the sewer lines) caused by underground exfiltration. RIVER WATCH contends that from January 1, 2010 through January 1, 2015, the DISTRICT experienced 1825 subsurface discharges from its sewer lines, which are point sources under the CWA, in violation of the following Discharge Prohibitions in Order No. R8-2009-0014:

        •     Discharge Prohibition III.C: "Discharge of wastewater at a location or in a

manner different from those described in this Order is prohibited."

- Discharge Prohibition III.D: "The bypass or overflow or untreated wastewater or wastes to surface waters or surface water drainage courses in prohibited, except as allowed in Standard Provision I.G. of Attachment D, Federal Standard Provisions."

**F.      SIXTH CLAIM FOR RELIEF**

**Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. §  1365(a)(1)(B) –**

**Violation of NPDES No. CA8000188 - Collection System Unpermitted Surface Discharges**

35.      RIVER WATCH realleges and incorporates by reference the allegations of Paragraphs 1 through 24 above including the CWA NOTICE as though fully set forth herein.  RIVER WATCH is informed and believes and based upon such information and belief alleges as follows:

36.      The DISTRICT has violated and continues to violate the CWA as evidenced by its wastewater collection system surface discharges of pollutants (raw sewage) from a point source (the sewer lines) caused by SSOs.  RIVER WATCH contends that from January 26, 2010 through November 16, 2014, the Moreno Valley/San Jacinto Valley/Sun City collection system experienced at least 28 SSOs from its sewer lines, and from January 23, 2010 through May 24, 2014 the Temecula Valley Regional collection system experienced at least 15 SSOs from its sewer lines, all of which are point sources under the CWA, in violation of the following Discharge Prohibitions in Order No. R8-2009-0014:

- Discharge Prohibition III.C: "Discharge of wastewater at a location or in a manner different from those described in this Order is prohibited."
- Discharge Prohibition III.D: "The bypass or overflow or untreated wastewater or wastes to surface waters or surface water drainage courses in prohibited, except as allowed in Standard Provision I.G. of Attachment D, Federal Standard Provisions."

• Discharge Prohibition III.E: "The discharge of any substances in concentrations toxic to animal or plant life is prohibited."

37. The violations of the DISTRICT as identified in all Claims for Relief are ongoing and will continue after the filing of this Complaint. RIVER WATCH alleges herein all violations which may have occurred or will occur prior to trial, but for which data may not have been available or submitted or apparent from the face of the reports or data submitted by the DISTRICT to RWQCB Region 8, RWQCB Region 9, or to RIVER WATCH prior to the filing of this Complaint. RIVER WATCH will amend this Complaint if necessary to address the DISTRICT's State and Federal violations which may occur after the filing of this Complaint. Each of the DISTRICT's violations is a separate violation of the CWA.

38. RIVER WATCH avers and believes and on such belief alleges that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, the DISTRICT will continue to violate the CWA as well as State and Federal standards with respect to the enumerated discharges and releases set forth in all Claims for Relief herein. RIVER WATCH avers and believes and on such belief alleges that the relief requested in this Complaint will redress the injury to RIVER WATCH and its members, prevent future injury, and protect their interests which are or may be adversely affected by the DISTRICT's violations of the CWA, as well as other State and Federal standards.

## VI.   PRAYER FOR RELIEF

WHEREFORE, RIVER WATCH prays that the Court grant the following relief:

1. Declare the DISTRICT to have violated and to be in violation of the CWA;

2. Issue an injunction ordering the DISTRICT to immediately operate its water treatment and reclamation facilities and their associated collection systems in compliance with the CWA;

3. Order the DISTRICT to perform the following remedial measures:

a.      The repair or replacement, within 5 years, of all sewer lines in the DISTRICT's wastewater collection system located within 200 feet from surface waters, which have been inspected via closed circuit television (CCTV) within the past 10 years and were rated as Significantly Defective under the Pipeline Assessment and Certification Program ("PACP") rating system or given a comparable assessment;

b.      A Surface Water Condition Assessment, by way of CCTV, within 2 years, of sewer lines in the DISTRICT's wastewater collection system located within 200 feet of surface waters, which have not been CCTV'd within the past 10 years;

c.      Within 5 years after completion of the Surface Water Condition Assessment:

i.      The repair or replacement of all sewer lines in the DISTRICT's wastewater collection system which have been found to be Significantly Defective under the PACP rating system;

ii.     The repair or replacement of sewer pipe segments containing defects with a rating of 4 based on the PACP rating system, if such defect resulted in a SSO, or, if the DISTRICT determines such defects are in close proximity to Significantly Defective segments that are in the process of being repaired or replaced; and,

iii.    The DISTRICT shall ensure that sewer pipe segments that contain defects with a rating of 4 based on the PACP rating system that are not repaired or replaced within five (5) years after completion of the Surface Water Condition Assessment are re-CCTV'd not more than 5 years to ascertain the condition of the sewer line segment. If the DISTRICT determines that the grade-4 sewer pipe segment has deteriorated and needs to be repaired or replaced, the DISTRICT shall complete such repair or replacement within 5 years after the last CCTV cycle;

d.      Beginning no more than 1 year after completion of the Surface Water Condition Assessment, the commencement of a Full Condition Assessment by

way of CCTV inspection of all sewer lines in the DISTRICT's wastewater collection system not within 200 feet of a surface water, to be completed within 7 years.  Any sewer pipe segment found to be Significantly Defective under the PACP rating system to be repaired or replaced within 5 years of the rating determination;

e.     Implementation in the DISTRICT's Capital Improvements Plan of a program to provide a Condition Assessment of all sewer lines at least every 7 years. Said program to begin 1 year following the Full Condition Assessment described above;

f.     Modification of the DISTRICT's Backup and SSO response plan to include the method or calculations used for estimating total spill volume, spill volume that reached surface waters and estimating spill volume recovered.  For Category I Spills, creation of a listing of nearby residents or business owners who have been contacted to attempt to establish the SSO start time, duration, and flow rate, if such start time, duration, and flow rate have not been otherwise reasonably ascertained (such as from a caller who provides information with a given time that the SSO began). Taking of photographs of the manhole flow at the SSO site using the San Diego Method array, if applicable to the SSO; or other photographic evidence that may aid in establishing the spill volume;

g.     A requirement for water quality sampling and testing whenever it is estimated that 50 gallons or more of untreated or partially treated wastewater from a SSO enters surface waters.  Constituents tested for to include: ammonia, fecal coliform, E. coli and a CAM-17 toxic metal analysis. The DISTRICT shall collect and test samples from three (3) locations: the point of discharge, upstream of the point of discharge, and downstream of the point of discharge. If any of said constituents are found at higher levels in the point of discharge sample and the downstream sample than in the upstream sample, the DISTRICT shall determine and address the cause of the SSO that enters surface waters, and employ the

following measures to prevent future overflows:

     i.     If the SSO is caused by a structural defect, then immediately spot repair the defect or replace the entire line;

     ii.    If the defect is non-structural, such as a grease blockage or vandalism to a manhole cover, then perform additional maintenance or cleaning, and any other appropriate measures to fix the non-structural defect;

h.     The creation of website capacity to track information regarding SSOs; or, in the alternative, the creation of a link from the DISTRICT's website to the CIWQS SSO Public Reports. Notification to all customers and other members of the public of the existence of the web based program, including a commitment to respond to private parties submitting overflow reports;

i.     Performance of human marker sampling on creeks, rivers, wetlands and areas of Temescal Creek, Murrieta Creek, and the San Jacinto, Santa Ana, and Santa Margarita rivers adjacent to sewer lines to test for sewage contamination from exfiltration;

j.     Creation of a mandatory, private sewer lateral inspection and repair program triggered by any of the following events: transfer of ownership of the property if no inspection/replacement of the sewer lateral occurred within 20 years prior to the transfer; the occurrence of 2 or more SSOs caused by the private sewer lateral within 2 years; a change of the use of the structure served (a) from residential to non-residential use, (b) to a non-residential use that will result in a higher flow than the current non-residential use, and (c) to non-residential uses where the structure served has been vacant or unoccupied for more than 3 years; upon replacement or repair of any part of the sewer lateral; upon issuance of a building permit with a valuation of $25,000.00 or more; upon significant repair or replacement of the main sewer line to which the lateral is attached;

k.     Performance of a study to determine the cause of the effluent limitation violations, said study to include an evaluation of the need to upgrade the

Complaint

DISTRICT's ultraviolet disinfection system; and,

l.       Upon the occurrence of an SSO, the DISTRICT shall take all feasible steps and necessary remedial actions, including but not limited to: adequate sampling to determine the nature and impact of the release; biological assessment to determine adverse effects on flora and fauna; and, adequate public notification to protect the public from exposure.

4.       Order the DISTRICT to pay civil penalties of $37,500.00 per violation/per day for its violations of the CWA;

5.       Order the DISTRICT to pay the reasonable attorneys' fees and costs of RIVER WATCH (including expert witness fees), as provided by 33 U.S.C. § 1365(d), and applicable California law; and,

6.       For such other and further relief as the court deems just and proper.


DATED: June 1, 2015          LAW OFFICE OF DAVID J. WEINSOFF


                             By: _____*/s/ David J. Weinsoff*_____
                                 David J. Weinsoff
                                 Attorney for Plaintiff
                                 CALIFORNIA RIVER WATCH